The Memorandum Decision and Preliminary Order below
is hereby signed.  Dated: September 22, 2008.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| AEGINA INVESTMENTS, LLC, | ) | Case No. 07-00297 |
| | ) | (Chapter 11) |
| Debtor. | ) | Not for Publication in |
| | ) | West's Bankruptcy Reporter |

MEMORANDUM DECISION AND PRELIMINARY ORDER RE
<u>OBJECTION TO CLAIM OF ALTURAS REAL ESTATE INTERESTS, LLC</u>

The conclusions this decision reaches are (1) that the moment immediately preceding the filing of the debtor's bankruptcy petition is the appropriate moment at which to measure the purchaser's claim for damages arising upon a bankruptcy trustee's rejection of an executory contract to purchase real property, and (2) that the contract at issue in this case was indeed an executory contract despite the debtor's prepetition breach of the contract.  The issues arise in this fashion. Wendell W. Webster, the trustee appointed in this case, has objected to the proof of claim filed by Alturas Real Estate Interests, LLC ("Alturas") which seeks $1.8 million in damages relating to a contract Alturas had with the debtor, Aegina Investments, LLC ("Aegina"), to purchase certain real property

(the "Property").  Alturas's contract called for a purchase price of $1.7 million, but Aegina refused to perform, and on the petition date, Alturas estimates, the Property was worth $3.5 million.  Accordingly, contends Alturas, it has a claim for $1.8 million.  Webster objects that the damages for any breach by Aegina (if there was no breach by Alturas) should be based instead on the difference between the fair market value of the Property at the time that the conveyance should have been consummated under the contract (long before the filing of the debtor's bankruptcy petition) and the contract price, which he estimates would result in a claim for only $500,000.

I

The parties do not dispute the basic facts.  The time for Aegina to perform under the contract was extended to April 8, 2005, but Aegina refused to perform, and instead Aegina entered into a contract to sell the Property to another entity.  (Webster contends that Aegina was excused from performance by reason of breaches by Alturas, but that is a different issue, and this decision addresses what happens if Aegina was *not* excused from performance.)  Alturas sued Aegina in the Superior Court for the District of Columbia on September 30, 2005.  Initially, it sued both for damages and for specific performance, but on October 3, 2006, it withdrew the claim for damages.  On June 7, 2007, before the scheduled date for a trial in the Superior Court, Aegina

filed its petition commencing this bankruptcy case.  Accordingly, as of the petition date, Alturas had pending a claim against Aegina for specific performance.  Webster has noticed up the Property for an auction sale with the minimum bid amount set at $2.75 million (which is $1.05 million more than Alturas was called upon to pay under its contract).  For purposes of preparing for trial on Webster's objection to Alturas's proof of claim, the parties seek a ruling regarding the date for measuring Alturas's damages (in the event that Alturas is held to be entitled to recover damages for breach of the contract).

## II

Rejection of an executory contract would leave Alturas with only a claim for damages.  Under 11 U.S.C. § 365(g), the rejection of an executory contract "constitutes a breach of such contract . . . (1) . . . immediately before the date of the filing of the petition."  In turn, under 11 U.S.C. § 502(g)(1), "[a] claim arising from the rejection , under section 365 . . . of an executory contract . . . of the debtor that has not been assumed shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section . . . the same as if such claim had arisen before the date of the filing of the petition."  The plain meaning of §§ 365(g)(1) and 502(g) permits the party injured by the rejection to assert an unsecured claim for its resulting damages as though the breach occurred

immediately before the date of the filing of the petition. Auction Co. of Am. v. FDIC, 141 F.3d 1198, 1201 n.3 (D.C. Cir. 1998) (" . . . rejection of an executory contract by a bankruptcy trustee is treated as a breach occurring immediately before filing of bankruptcy petition."); Bank of Montreal v. American Homepatient, Inc. (In re American Homepatient, Inc.), 414 F.3d 614 (6th Cir. 2005), cert. denied, 547 U.S. 1019 (2006); Taunton Municipal Lighting Plant v. Enron Corp. (In re Enron Corp.), 354 B.R. 652 (S.D.N.Y. 2006) (holding that damages stemming from the rejection of an executory contract are measured from the last business day before the filing of the petition); Aslan v. Sycamore Investment Co. (In re Aslan), 909 F.2d 367, 371-72 (9th Cir. 1990) (date of the breach of rejected executory contract is the date immediately prior to the filing date for the purpose of calculating damages); In re Silberkraus, 253 B.R. 890, 907 (Bankr. C.D. Cal. 2000) (damages from rejection at a minimum the difference between the option price and the fair market value of the commercial property on the date the petition was filed), aff'd, 336 F.3d 864 (9th Cir. 2003).[1]

---

[1] Although it will probably be inconsequential in this case, I add this caveat to the foregoing discussion.  The term "date" in the language of § 365(g) (referring to rejection as occurring "immediately before the date of the filing of the petition") means the precise moment before the filing of the bankruptcy petition, not the calendar day preceding the petition date.  See  In re Barbaran, 365 B.R. 333, 335 (Bankr. D.D.C. 2007), and In re Moore, 359 B.R. 665, 670-72 (Bankr. E.D. Tenn. 2006).

Accordingly, if the contract was an executory contract, "damages should be fixed as of the time of the deemed breach, which is 'immediately before the date of the filing of the petition.'" In re American Homepatient, 414 F.3d at 618.  The damages upon a trustee's rejection of a contract for the debtor's sale of real property, if it was executory on the petition date, is measured by the difference between the contract sale price and the fair market value of the real property immediately preceding the date the seller filed its bankruptcy petition.  In re Aslan, 909 F.2d at 371-72.

As Webster points out, the long-standing rule in the District of Columbia when a vendor is in breach of a contract to sell real property because the vendor does not have good title, or when the vendee elects only to sue for damages upon the vendor's refusal to perform, is that damages are "measured by the difference between the sales contract price and the fair market value of the property at the time that the property should have been conveyed." Basiliko v. Pargo Corp., 532 A.2d 1346, 1348 (D.C. 1987) (citations omitted) (vendor lacked good title).  See also Quick v. Pointer, 186 F.2d 355 (D.C. Cir. 1950) (vendor lacked good title); Phillips & Sager v. Kern, 271 F. 547, 550 (1921) (builder-vendor refused to build house, as required by a contract of sale, on the lot sold, and vendee sued for damages).  But no case decided under District of Columbia law has addressed

5

what date a court should use to determine the fair market value of property in order to fix the amount of a damage claim where the purchaser waived the original breach by suing for specific performance but where the specific performance remedy was later rendered unavailable by an act of the vendor (such as the vendor's rejecting the executory contract in bankruptcy).[2]

Under District of Columbia law, one of a vendee's rights under a contract to sell real property is the right to obtain specific performance.  When specific performance is feasible, but the vendor undertakes a subsequent act to frustrate that right by

---

[2] Cohen v. Lovitz, 255 F.Supp. 302 (D.C. 1966), aff'd sub nom. Wolf v. Cohen, 379 F.2d 477 (D.C. Cir. 1967), upon which Webster principally relies, extended the holding of Quick v. Pointer to a claim for damages pursued by a vendee who obtained specific performance, and is similarly distinguishable.  Cohen v. Lovitz involved a contract of sale at a price of $1,000,000 for property which had a fair market value of the same amount on the originally scheduled conveyance date.  The contract was later performed (pursuant to a decree of specific performance) on a date on which the property's fair market value was $1,445,000.  But prior to the originally scheduled date of conveyance, the vendee had entered into a contract to sell the property to a third party for $1,800,000, and, based on losing the benefit of that contract, it contended that it was entitled to recover delay damages of $355,000.  Under Quick v. Pointer, if the vendee had sued only for damages, the vendee--despite having a contract for re-sale at $1,800,000--would have had no damage claim as the property's fair market value at the originally scheduled date of conveyance and the purchase price were both $1,000,000.  See Wolf v. Cohen, 379 F.2d at 479-50.  When, instead of suing for damages, the vendee sued for both specific performance and delay damages, the vendee was similarly not entitled to damages based on the vendee's losing the benefit of its contract of re-sale.  Id.  Cohen v. Lovitz did not involve a vendor who took an act rendering specific performance impossible.

making specific performance unavailable, it stands to reason that District of Columbia law would permit the vendee to obtain damages based on the value of the property as of the date that the vendor made specific performance unavailable.  But the court need not rely on District of Columbia law to determine the date on which damages are measured, as the Bankruptcy Code supplies the answer.

When a vendee has elected not to treat the vendor's refusal to perform as terminating the contract of sale and has instead sued for specific performance, the Bankruptcy Code treats rejection of the executory contract as replacing the equitable remedy of specific performance with a monetary claim, and treats the petition date as the date of breach and the date on which to measure the damages arising from specific performance being lost as a remedy, not the earlier date on which the debtor-vendor initially refused to perform.  In re Aslan, 909 F.2d at 371-72. See also Beard v. S/E Joint Venture, 581 A.2d 1275, 1284 (Md. 1990) ("Where, as here, the purchaser sues for specific performance upon breach of a contract to convey realty, and specific performance becomes unavailable during the pendency of the action, the loss of the bargain damages, awarded in substitution for specific performance, may properly be computed by valuing the property at the time specific performance becomes unavailable."), motion for reconsideration denied, 587 A.2d 239

(Md. 1991); Dunning v. Alfred H. Mayer Co., 483 S.W.2d 423, 428 (Mo. App. 1972) (damages awarded as of date that court ruled that specific performance would be denied).  In other words, upon rejection of an executory contract, it is loss of the right of specific performance that is to be compensated, with damages to be measured by the value of the property as of the petition date.

Beard fully supports the view that the date of a debtor's earlier refusal to perform is not the date of breach for purposes of calculating damages when the vendor has sued for specific performance.  The suggestion in the decision on reconsideration in Beard, 587 A.2d at 242-45, that the date of rejection is the date on which specific performance becomes unavailable is off the mark: as decisions such as In re American Homepatient, 414 F.3d at 614, and In re Enron Corp., 354 B.R. at 652, demonstrate, §§ 365(g) and 502(g)(1), as a matter of federal law, set the date of the filing of the petition as the date on which the executory contract is deemed breached and set the moment preceding the filing of the petition as the point at which the claim, as required by § 502(g)(1), "shall be determined."  Moreover, in this case, Alturas's right to specific performance has been stymied since the petition was filed, with rejection an almost foregone conclusion, and it makes sense as a practical matter to view the petition date as the date on which the contract became no longer enforceable by way of specific performance, and as the

date on which damages should be calculated.

                                III

Webster, however, contends that the contract was no longer an executory contract once Aegina defaulted on the contract.  But a seller's default on a contract for the sale of real property does not by itself terminate the contract.  A contract for the sale of real property, which, on the facts presented so far in this case, validly was the subject of a pending specific performance lawsuit at the commencement of a bankruptcy case, is an executory contract under 11 U.S.C. § 365.  In re Aslan, 909 F.2d at 371; In re Sundial Asphalt Co., 147 B.R. 72, 80 (E.D.N.Y. 1992); TKO Properties, LLC v. Young (In re Young), 214 B.R. 905, 910 (Bankr. D. Idaho 1997); In re RLR Celestial Homes, Inc., 108 B.R. 36, 46 (Bankr. S.D.N.Y. 1989).  As stated in RLR Celestial Homes, "a contract is not deemed terminated and no longer executory simply because the debtor has defaulted or breached the contract before the commencement of a bankruptcy case."  108 B.R. at 45.  See also In re Alexander, 670 F.2d 885, 887 n.1 (9th Cir. 1982) ("In fact, [debtor] may have breached the contract by refusing to convey, but the fact of breach does not somehow convert the executory contract into an executed contract.").

Webster contends that "when the debtor has not only failed to perform but has breached the contract pre-petition with the result that the other party has no further duty to perform but

                                 9

rather holds a claim against the debtor, the contract is no longer executory."  Tr's Mem. in Further Support of Obj. (Docket Entry ("DE") No. 183) (quoting In re Murtishi, 55 B.R. 564, 567 (Bankr. N.D. Ill. 1985)).  In In re Murtishi, the court was of the view that "[t]o allow a debtor to reject a contract breached pre-petition would be tantamount to sanctioning the operation of section 365 as a treasure trove for such a rejecting debtor."  55 B.R. at 568 (citation omitted).  Moreover, it was of the view that the "vendees had materially performed."  Id.  It thus held that the contract was no longer executory.  Here, however, it would be the debtor's estate that would reap a "treasure trove" if the contract were treated as no longer executory.  Alturas was still pressing for performance by both sides the moment before the petition was filed, and its damages should be measured by what it suffered at the moment the bankruptcy petition was filed and resulted in Alturas losing its right to specific performance.

Moreover, In re Murtishi is wrong in its premise that a prepetition breach by the debtor destroys the other party's obligation to perform.  A debtor has a right to cure defaults under 11 U.S.C. § 365(b) and assume an executory contract that was not terminated prepetition in order to enjoy its benefits (including enforcing the obligations of the other party).  See In re RLR Celestial Homes, Inc., 108 B.R. at 45.  Such an executory contract thus continues in existence, despite the debtor's

prepetition breach, and can be either assumed or rejected. <u>See also</u> <u>In re Nickels Pier, LLC</u>, 372 B.R. 218, 222-23 (D.N.J. 2007) (executory contract is not terminated by debtor's material breach).

Upon a seller breaching a real property sale contract by failing to convey title, the purchaser has two remedies available. It may terminate the contract and its duty to perform, and seek damages, in which case the contract is no longer executory. Alternatively, it can leave the contract intact and seek specific performance, in which case the contract remains executory. <u>See</u> <u>In re Aslan</u>, 909 F.2d at 370. By filing a specific performance action, a purchaser effectively waives the vendor's prepetition breach and the contract remains executory. <u>Id.</u>; <u>In re Young</u>, 214 B.R. at 910 ("By seeking specific performance of the contract, TKO essentially waived the breach and treated the contract as though it was still in effect.").

Webster also cites <u>In re C & S Grain Co.</u>, 47 F.3d 233, 237 (7th Cir. 1995), as supporting the view of <u>In re Murtishi</u> that prepetition breach results in relieving the other party of a duty to perform, but <u>C & S Grain</u> does not stand for that broad a proposition and is readily distinguishable. There the court held that a contract for the purchase of grain must have been completed or terminated prepetition in order not to be executory. The debtor's loss of its license to engage in the purchase of

grain resulted in the contract being void, as a matter of state law, insofar as further enforcement by the debtor was concerned. This resulted in the seller's obligations under the contract being at an end as it could not sell grain to an unlicensed entity. Here, in contrast, there never came a point that the debtor was barred by law from enforcing the contract.

Alturas pursued specific performance from the outset of its lawsuit in the Superior Court. Although it initially sued as well for damages, it later withdrew that claim, clarifying that it was electing to pursue only specific performance to the extent that the two remedies were inconsistent. Webster does not contend that Alturas waived the right to pursue specific performance by initially including a claim for damages in its complaint in the Superior Court, and the law of the District of Columbia is that "a prayer for damages as an additional remedy due to delay in performance is not a contradiction of a prayer for specific performance." Clay v. Faison, 583 A.2d 1388, 1391-92 (D.C. 1990) (footnote omitted); Bacmo Assocs. v. Strange, 388 A.2d 487, 489 (D.C. 1978). In any event, Alturas was allowed to amend its complaint to elect only to pursue specific performance, treating the contract as still in place, and to drop any claim for damages that would have arguably inconsistently treated Alturas's obligations under the contract as terminated. Any issue of waiver was thereby eliminated.

IV

In accordance with the foregoing, it is

ORDERED with respect to the trustee's objection (DE No. 127) to Alturas's claim (1) that the debtor's contract of sale with Alturas was an executory contract at the time of the filing of the debtor's bankruptcy petition, and (2) that any damages for rejection of the executory contract to which Alturas may be determined to be entitled will be measured by the value of the property at the moment preceding the filing of the bankruptcy petition.

[Signed and dated above.]


Copies to:  Debtor; debtor's attorney; Linda Correia, Esq.; Jeffrey L. Tarkenton, Esq.; Office of U.S. Trustee.